
# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MURPHY L. JAMERSON,

        Plaintiff,

v.                                                  Case No. 04-C-749

MILWAUKEE COUNTY,
PROCUREMENT DIVISION,
and MARK RYAN,
MILWAUKEE COUNTY CLERK,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. PROCEDURAL AND FACTUAL BACKGROUND

This action was commenced on August 5, 2004, when the plaintiff, Murphy L. Jamerson,

d/b/a 4 Star Printing ("Jamerson" or "4 Star"), proceeding *pro se*, filed a complaint in the Eastern

District of Wisconsin alleging that his constitutional rights were violated pursuant to 42 U.S.C. §

1983, the Fourteenth Amendment, and 42 U.S.C. § 1981. Liberally construed, Jamerson's complaint

also includes various state law claims, such as breach of contract, intentional infliction of emotional

stress, and defamation.[1] With respect to his federal claims, Jamerson alleges that the defendants

deprived him of his right to procedural due process while acting under the color of law in violation

of 42 U.S.C. § 1983, and that the defendants deprived him of his right to procedural due process in

---

[1] In the plaintiff's response to the defendants' motion for summary judgment, however, Jamerson states that he is not alleging any tort claims against the defendants. (Pl.'s Resp. to Def.'s Br. in Support of Summ. J. at 2.) Thus, the only remaining state law claim against the defendants is breach of contract.

violation of the Fourteenth Amendment. Furthermore, Jamerson alleges that the defendants interfered with his ability to enforce a contract in violation of 42 U.S.C. § 1981.

Currently pending before the court are the parties' cross motions for summary judgment. On February 7, 2006, the defendants' filed a motion for summary judgment; on April 17, 2006, the plaintiff filed his response; and on April 21, 2006, the defendants filed a letter brief, which this court will construe as the defendants' reply. On April 14, 2006, the plaintiff also filed a motion for summary judgment; on April 21, 2006, the defendants filed their response; and as of this date, the plaintiff has not filed a reply. Thus, the summary judgment motions are fully briefed and are ready for resolution. For the reasons which follow, the defendants' motion for summary judgment on Jamerson's federal claims will be granted, and the plaintiff's motion for summary judgment on his federal claims will be denied. Furthermore, the court will decline to exercise supplemental jurisdiction over Jamerson's state law claim and will dismiss Jamerson's state law claim without prejudice in order to allow Jamerson to file his state law claim in the Milwaukee County Circuit Court.

In accordance with the provisions of Civil Local Rule 56.2(a) (E.D. Wis.), the defendants' motion for summary judgment was accompanied by a set of proposed findings of fact. Likewise, the plaintiff's motion for summary judgment was also accompanied by a set of proposed findings of fact. However, neither party responded to the opposing party's proposed findings of fact. A review of the parties' respective proposed findings reveal that the following are the material and (except where noted) undisputed facts that are relevant to the disposition of the cross motions for summary judgment on Jamerson's federal claims.

2

AO 72A
(Rev.8/82)

Jamerson has been doing business as 4 Star Printing since 1998. (Def.'s Proposed Findings of Fact ("DPFOF") ¶ 1.) Mark Ryan ("Ryan") is the Milwaukee County Clerk. (DPFOF ¶ 15.) Ryan has served as Milwaukee County Clerk since April 22, 1999. (DPFOF ¶ 16.) ) The Milwaukee County Clerk is an elected official and is the secretary of Milwaukee County, a corporation, and the secretary for the Milwaukee County Board of Supervisors. (DPFOF ¶ 17.) Jamerson is suing Ryan in his official capacity as Milwaukee County Clerk. (DPFOF ¶ 2.)

In February of 2003, the Milwaukee County Department of Administration, Procurement Division solicited bids for the printing of the Milwaukee County Board's *Journal of Proceedings*. The *Journal of Proceedings* is a pamphlet prepared for each Milwaukee County Board meeting and is approximately 200 pages long. 4 Star was the only bidder for the printing work of the *Journal of Proceedings* for the May 1, 2003 through April 30, 2004 period. (DPFOF ¶ 27.)

4 Star and Milwaukee County ("the County") entered into a price agreement for the period of May 1, 2003 through April 30, 2004 for the printing of the *Journal of Proceedings*. (DPFOF ¶ 5.) Jamerson testified that there was no guarantee as to the amount of work to be provided by 4 Star under the price agreement. Jamerson also testified that the price agreement did not guarantee him a set amount of compensation. (DPFOF ¶ 6.)

Furthermore, Ryan testified that the price agreement is not a contract and that the County could utilize 4 Star's services to print the *Journal of Proceedings* as much or as little as the County wanted to. (DPFOF ¶ 20.) Ryan testified that the County made the decision not to use 4 Star's service to print the *Journal of Proceedings* because the County wanted to switch to an electronic format. (DPFOF ¶19; Plaintiff's Proposed Findings of Fact ("PPFOF") ¶¶ 4, 10.) Ryan did not believe that 4 Star was unable to perform the work. (PPFOF ¶ 12.)

3

AO 72A
(Rev.8/82)

In May of 2003, Ryan told Janine Secora, the Deputy Clerk of Milwaukee County, that the County was going to start producing the *Journal of Proceedings* electronically. (PPFOF ¶ 31.) In May of 2003, Ryan told Jamerson that he "didn't know what was going on" because "[the County was] working on the electronic version and [they] didn't know if it was going to be successful or not." (PPFOF ¶ 32; Ryan Dep. at 15, lines 22-24.) Currently, the *Journal of Proceedings* printing work is being done in-house and electronically due to County budget constraints. (DPFOF ¶ 23.)

Paulette (Pinkey) Buford ("Buford") is the Purchasing Administrator for the Procurement Division of Milwaukee County. She has been employed by Milwaukee County since 1999. (DPFOF ¶ 28.) Buford signed the price agreement between the County and 4 Star. (DPFOF ¶ 29.) Buford testified that there is no set quantity of goods or services requested in a price agreement, that is, a price agreement is not a purchase order. Rather, the numbers listed on the bid packet for the printing of the *Journal of Proceedings* were based upon estimated usage. When a price agreement is executed, the vendor agrees to provide the services requested at the price reflected in the price agreement. However, if the department never asks the vendor to provide the services, the department does not owe the vendor anything. (DPFOF ¶ 31.)

Buford also testified that while the County's Procurement Division solicits the bids for goods/services requested by the departments, and executes the price agreements, once a price agreement is in place, the work orders come directly from the department that requested the goods/services, in this case, the Milwaukee County Clerk's office. (DPFOF ¶ 32.) Thus, the price agreement is between the buyer, in this case, the Milwaukee County Clerk's office, and the vendor, 4 Star. (DPFOF ¶ 36.) No work was performed on the price agreement between the County and 4

4

AO 72A
(Rev.8/82)

Star in May or June of 2003. (DPFOF ¶ 38.) Buford testified that the County did not cancel 4 Star's price agreement. (PPFOF ¶¶ 15, 16.)

During discovery, however, a purchase order dated October 3, 2003 addressed to Voice Printing was produced, and, on its face, the purchase order appears to be for the printing of the *Journal of Proceedings* for 2001-2002. Buford testified that this purchase order did not come through the Procurement Division. (DPFOF ¶ 40; PPFOF ¶ 6.) Furthermore, a check to Voice Printing dated October 18, 2003, referencing the aforementioned purchase order was also produced. As that check indicates, Voice Printing was paid for printing work by the County in the sum of $926.09 on October 18, 2003. (DPFOF ¶ 9.) Buford testified that this check to Voice Printing did not come from the Procurement Division. (DPFOF ¶ 39.) Ryan testified that he was unaware of the Voice Printing check dated October 18, 2003. (DPFOF ¶ 26.) However, Ryan testified that Milwaukee County and Voice Printing had price agreements for many years. (DPFOF ¶ 25; PPFOF ¶ 28.)

An e-mail from Ryan to Barry Yenor ("Yenor"), a buyer in the Procurement Division, directing Yenor to extend the price agreement with Voice Printing and reject the price agreement with 4 Star Graphics was also produced. (Buford Dep. Ex. 2.) The Ryan/Yenor e-mail, dated March 27, 2003, was copied to Buford. (Buford Dep. Ex. 2.) The Ryan/Yenor e-mail also states that "[the County Clerk's Office is] currently working with County Board Staff and IMSD Representatives per the direction of the County Board and Finance and Audit Committee to look at alternative ways to produce the *Journal of Proceedings*." (Buford Ex. 2.) Furthermore, an e-mail dated July 22, 2003 from Yenor to Ryan, which was also copied to Buford, was produced. That e-mail indicates that on April 1, 2003, Buford told Yenor to extend the contract with Voice Printing and that he wrote up the

5

AO 72A
(Rev.8/82)

paperwork to extend Voice Printing's price agreement that day.[2] (Buford Dep., Ex. 3.) Voice Printing's price agreement was extended until October 1, 2003. (Buford Dep., Ex. 4.) It is not standard procedure to extend another vendor a price agreement if a price agreement is already in place for the requested goods/services. (PPFOF ¶ 23.)

Jamerson never received a work order or a purchase order from the Milwaukee County Clerk's office to print the *Journal of Proceedings*. (¶ 14.)

Jamerson was treated for depression by Doctors Linda Burke and Edmundo Centera in February and March of 2005. (DPFOF ¶ 11.) Jamerson's treatment consisted of ten or twelve appointments. Jamerson was prescribed medication to calm his nerves by Dr. Centera. (DPFOF ¶ 12.) Jamerson's alleged depression was left untreated in 2003 and 2004. (¶ 13.)

## II. SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting advisory committee's note to 1963 amendment of Fed. R. Civ. P. 56(e)). "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

---

[2] Buford testified that she doubts the veracity of this e-mail. (Buford Dep. at 35-39.)

6

Case 2:04-cv-00749-WEC   Filed 06/07/06   Page 6 of 23   Document 81

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "'[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion.'" *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson,* 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. Univ. of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252). Because the parties in this case have filed cross motions for summary judgment, the court must extend the required favorable inferences to each when

7

AO 72A
(Rev.8/82)

considering the other's motion. *See McCarthy v. Kemper Life Ins. Co.*, 924 F.2d 683, 687 (7th Cir. 1991).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

As previously stated, Jamerson alleges that the defendants deprived him of his Fourteenth Amendment right to procedural due process under color of state law, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983 and also deprived him of his right to procedural due process guaranteed by the Fourteenth Amendment. Furthermore, Jamerson alleges that the defendants interfered with his ability to enforce a contract in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

*A. Procedural Due Process Claim Under Section 1983*

Section 1983 creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (internal quotations omitted). Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Thus, the first step in any § 1983 analysis is to identify the specific constitutional right which was allegedly violated. Jamerson alleges that his right to procedural due process guaranteed by the Fourteenth Amendment was

8

Case 2:04-cv-00749-WEC   Filed 06/07/06   Page 8 of 23   Document 81

violated when the County breached 4 Star's price agreement without his first receiving notice and a hearing. (Pl.'s Br. at 6.)

"'In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" *Doe by Nelson v. Milwaukee County*, 903 F.2d 499, 502 (7th Cir.1990) (emphasis omitted) (internal quotations omitted) (quoting *Zinermon v. Burch*, 494 U.S. 113 (1990)). Accordingly, procedural due process claims require a two-step analysis. At the outset, the court must determine whether the plaintiff was deprived of a constitutionally protected interest in life, liberty, or property. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). And, if so, the court must then consider what process was due. *Id.*

Thus, the first question before the court is whether 4 Star's contract[3] with the County created a "property" interest sufficient to be protected under the due process clause.[4] To be constitutionally cognizable, a property interest must involve something to which a person has a "legitimate claim of

---

[3] This court will assume, *arguendo*, for the purpose of evaluating Jamerson's § 1983 claim that the price agreement is a contract between the County and 4 Star. The terms of such contract being that if the County decides to print the 2002-2002 *Journal of Proceedings* between May 1, 2003 and April 30, 2004, the County must utilize 4 Star's services to do so.

[4] While Jamerson does not explicitly allege that he was deprived of a liberty interest, he does allege that the defendants' actions resulted in "irreparable damage to [his] good name." (Pl.'s Br. at 6.) Thus, it appears that Jamerson is alleging damage to his reputation, that is, defamation. An injury to reputation by itself, however, is not a "liberty" interest protected under the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 708-09 (1976). And, although an occupational liberty interest has been recognized, such a liberty interest is not infringed unless the plaintiff presents evidence that the government official's stigmatizing statements made "it virtually impossible for the [individual] to find new employment in his chosen field." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 531 (7th Cir. 2000) (internal quotations omitted). Jamerson has not done so, and such being the case, to the extent Jamerson is alleging a deprivation of his occupational liberty under the Constitution, his procedural due process claim, and his corresponding § 1983 claim, do not survive summary judgment.

9

Case 2:04-cv-00749-WEC   Filed 06/07/06   Page 9 of 23   Document 81

entitlement." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). A unilateral expectation will not suffice. *Id.* Furthermore, a protected property interest must be based on a source independent of the Constitution, for instance, state law or, as in this case, a contract with the state. *Id.* at 578. Moreover, the Seventh Circuit has held that "[i]f a contract creates rights specific enough to be enforced in state court by awards of damages or specific performance, then it creates a legitimate claim of entitlement; and if it creates such a claim, it is 'property.'" *Mid-American Waste Sys., Inc. v. City of Gary, Indiana*, 49 F.3d 286, 290 (7th Cir. 1995) (distinguishing the Seventh Circuit's approach from other circuits' approaches where "only contracts creating a special status (employment, for example) count as 'property'"). Accordingly, under this formulation, 4 Star has a protected property interest in the price agreement if it is successful in demonstrating that the County breached the price agreement. This court, however, does not find it necessary to further examine this issue, because even assuming that 4 Star has a protected property interest in the price agreement, 4 Star's claim is not actionable because it has not been denied due process.

Jamerson argues that he was entitled to notice and a hearing prior to the County's alleged breach of the price agreement. However, what process is "due" in a particular case is a "flexible concept that varies with the particular situation," and a predeprivation hearing (that is, a hearing held before the state deprives an individual of his or her liberty or property) is not always necessary to comply with procedural due process. *Zinermon*, 494 U.S. at 127. Indeed, the Supreme Court has recognized that "postdeprivation remedies made available by a state can, under certain circumstances, [also] satisfy the requirements of procedural due process." *Parratt v. Taylor*, 451 U.S. 527, 544 (1981). This is such a case.

10

Simply put, the Seventh Circuit has held that "when the issue is the meaning of a commercial contract, a [predeprivation] hearing is *unnecessary*, and the opportunity to litigate in state court is all the process 'due' to determine whether the state has kept its promise." *Mid-American Waste Sys., Inc.*, 49 F.3d at 291 (emphasis in original). In *Mid-American Waste Systems*, the Seventh Circuit held that in a breach of contract action under a lease between a waste hauler and a city, a prior hearing was unnecessary and an adjudication in state court satisfied the requirements of procedural due process. The Seventh Circuit noted "[t]he adequacy of litigation as a means to determine the meaning of a contract is a premise in our legal system," and held that "litigation after the fact provides an ample opportunity to test the validity of the City's interpretation and supply a remedy if the City has erred." *Id.* at 291-92. Similarly, in this case, it is clear that 4 Star has a breach of contract claim against the County, and 4 Star's ability to litigate that claim (even though it is *after* the County's alleged deprivation of 4 Star's property) "provides an ample opportunity to test the validity of the [County's] interpretation [of the price agreement] and supply a remedy if the [County] has erred [in its interpretation of the agreement]." *Id.* Accordingly, because the County was not required to provide a predeprivation hearing, and all the process that is *due* in this case is 4 Star's opportunity to litigate its breach of contract claim in state court, 4 Star was not deprived of its constitutional right to procedural due process.

11

## B. Procedural Due Process Claim Under the Fourteenth Amendment[5]

Jamerson also argues that the defendants violated his procedural due process rights in violation of the Fourteenth Amendment. (Pl.'s Br. at 6.) While analyzing Jamerson's procedural due process claim brought under § 1983, however, this court concluded that Jamerson's procedural due process rights were not violated. To the extent Jamerson is alleging that his liberty interest in his right to contract was violated by the defendants without proper notice and hearing, his claim must still fail. (Pl.'s Br. at 7.) This is because, even assuming Jamerson does have such a "liberty interest," all the process that is due when a commercial contract dispute is at stake is the opportunity to litigate the breach of contract claim in state court. To reiterate, "when the issue is the meaning of a commercial contract, a prior hearing is unnecessary, and the opportunity to litigate in state court is all the process 'due.'" *Mid-American Waste Sys.*, 49 F.3d at 291. Indeed, "[i]t has long been settled that a mere breach of contract by the government does not give rise to a constitutional claim." *Sudeikis v. Chicago Transit Auth.*, 774 F.2d 766 (7th Cir. 1985) (holding that plaintiffs' allegations that they were deprived of their liberty and property interests when the government (the Chicago Transit Authority) violated provisions of a settlement agreement between plaintiffs and the government was "nothing more than a breach of contract action" and that the plaintiffs' had failed to state a claim under § 1983).

Finally, the court notes that because 4 Star is a sole proprietorship, 4 Star's contract with the County may have been, at least in Jamerson's eyes, more akin to an employment contract than a

---

[5] The plaintiff's procedural due process claim brought under section 1983 and his claim brought under the Fourteenth Amendment are essentially the same claim. The court separated its analysis of these claims because it appears that Jamerson is alleging that he was deprived of a different "liberty interest" without due process of law in this claim than in his claim brought under § 1983. *See* Pl.'s Br. at 7.

12

commercial contract. However, the fact is that Jamerson was not an employee of the County. Rather, the price agreement was between the County and 4 Star, which simply happens to be a sole proprietorship. Thus, the interpretation or breach of a commercial contract is the issue in this case, and, at least for constitutional purposes, the commercial contract has been treated accordingly. Consequently, and for all of the foregoing reasons, the defendants' motion for summary judgment on the plaintiff's claim under the Fourteenth Amendment will be granted.

*C. Section 1981 claim*

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The term "'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C.§ 1981(b). This court, however, need not spend much time on Jamerson's § 1981 claim. This is because, during his deposition, Jamerson testified that he is not alleging that his constitutional rights were violated based upon his race (Jamerson is African American). Specifically, Jamerson's deposition testimony provides as follows:

> [Defense Counsel]: Are you–now, when I read the complaint, where I really thought you were going with this constitutional question was that it was a race-based complaint. Are you alleging that your constitutional rights were violated on the basis of race?

> [Jamerson]: No, I didn't specifically say that it was based on race at all. No.

> [Defense Counsel]: So you're alleging that, what, that there was 14 amendment due process rights that were violated? So the constitutional question here is due process issue, it's not a race-based issue? Is that what you're saying?

> [Jamerson]: As well, correct.

> [Defense Counsel]: You're saying it is a race-based issue?

13

AO 72A
(Rev.8/82)

[Jamerson]: No, I'm not saying it's a race-based issue. I'm saying due process.

(Jamerson Dep. at 14-15.)

However, in his affidavit filed in response to the defendants' motion for summary judgment, Jamerson asserts that he "re-alleges claims of Constitutional Federal Rights in his Brief that state a claim for relief under . . . [section] 1981." (Jamerson Aff. at 1.) Furthermore, Jamerson argues in his brief that he was discriminated against on the basis of his race and explains his damaging deposition testimony as follows:

> [at his deposition] defendant's counsel was confusing the plaintiff and asking questions and theories of law in a personal deposition that counsel knew or should have known that no reasonable pro se individual would be able to answer. . . . The words "not necessarily" means no to the Race issue on plaintiff's due process claim and that the plaintiff's discrimination claim is redress under violation of 1981 on refusal to extend the same contractual opportunity to the plaintiff as offered to whites. Further on the grounds that the plaintiff has been subject to a racial identification as a non-white citizen.

(Pl.'s Resp. to Def.'s Brief in Support of Summ. J. at 2.) But, an argument, or more precisely, an explanation, in a brief is not admissible evidence. And, even assuming, *arguendo*, that Jamerson had provided in his affidavit his explanation for his prior deposition testimony (that is, that he was confused regarding the question presented to him), this court would nonetheless strike that explanation from Jamerson's affidavit. It is well-established that "[u]nless there is a compelling reason to the contrary, [courts] do not permit a witness to contradict his own deposition testimony by subsequent affidavit created in an effort to change the facts previously testified to." *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 920 n.4 (7th Cir. 2001) (citing *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir.1995)); *see Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 756 (7th Cir.1998) (parties may not defeat summary judgment by creating sham issues of fact with affidavits that

14

contradict their prior depositions); *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-70 (7th Cir.1996) (same).

While the court has great discretion in deciding whether to allow a party to change damaging deposition testimony with a supplemental affidavit, "[c]ourts generally ignore attempts to patch-up potentially damaging deposition testimony with a supplemental affidavit unless the party offers a suitable explanation-e.g., confusion, mistake or lapse in memory-for the discrepancy." *Maldonado v. U.S. Bank*, 186 F.3d 759, 769 (7th Cir.1999). To be sure, Jamerson asserts that he was confused regarding the question asked by defense counsel at his deposition and hence, gave damaging testimony. However, after reviewing the deposition transcript, the court does not find Jamerson's assertion that he was confused to be plausible. Indeed, Jamerson was asked not once but twice whether he was alleging that his constitutional rights were violated on the basis of his race, and not once but twice he testified that he was not. Thus, taking the facts in a light most favorable to Jamerson, this court concludes that no reasonable jury could find that the defendants violated § 1981.

Moreover, even if this court disregarded Jamerson's deposition testimony, Jamerson's § 1981 claim would still not survive summary judgment. Section 1981 claims are evaluated under the same legal standard as discrimination claims brought under Title VII. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004) (stating that § 1981 claims are evaluated under the same rubric as Title VII claims). Thus, to prevail at the summary judgment stage on his race discrimination claim under §1981, Jamerson must demonstrate Ryan's discriminatory intent under either the "direct" method or the "indirect" method of proof.

A plaintiff proceeding under the "direct method may rely on two types of evidence: direct evidence or circumstantial evidence." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th

15

Cir. 2005). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998) (internal quotations omitted). Direct evidence is evidence that may "'be interpreted as an acknowledgment of discriminatory intent by the defendant.'" *Rudin*, 420 F.3d at 720 (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Simply stated, "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000)). Admittedly, direct evidence establishing discriminatory intent is rare.

A plaintiff may also prevail under the direct method by establishing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decision-maker." *Id.* (emphasis added). Circumstantial evidence "may come in the form of 'suspicious timing, ambiguous statements oral or written, [or] behavior toward or comments directed at other [individuals] in the protected group.'" *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) (quoting *Troupe*, 20 F.3d at 736). The circumstantial evidence, however, "must point directly to a discriminatory reason for the [decision-maker's] action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

A plaintiff proceeding under the indirect method, as established in *McDonnell Douglas*, must show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of a protected class. *See Ineichen v. Ameritech*, 410 F.3d 956, 959 (7th Cir. 2005). "The failure to establish any one of the initial four

16

AO 72A
(Rev.8/82)

elements [of a prima facie case] defeats a discrimination claim." *Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005). If the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the decision. *McDonnell Douglas*, 411 U.S. at 802. Then, if the defendant articulates a legitimate, nondiscriminatory reason, the burden of production shifts back to the plaintiff to show that the defendant's explanation was pretextual. *Ineichen*, 410 F.3d at 961.

Jamerson has not produced any evidence that could "be interpreted as an acknowledgment of discriminatory intent by [the County]," and therefore, has not produced any direct evidence of intentional discrimination. *Troupe*, 20 F.3d at 736. Nor has Jamerson established "a convincing mosaic" of circumstantial evidence from which a reasonable jury could infer intentional discrimination by the County. Indeed, the only circumstantial evidence Jamerson has presented is (1) he is African American; (2) the County Clerk's office did not utilize his services for the printing of the 2001-2002 *Journal of Proceedings*; (3) the president of Voice Printing is white; and (4) the County Clerk's office instead utilized Voice Printing's services for the printing of the 2001-2002 *Journal of Proceedings*.[6]

Thus, because Jamerson has failed to produce sufficient evidence under the "direct" method, he must proceed under the familiar burden-shifting paradigm set forth in *McDonnell Douglas*. In a contract setting such as this, 4 Star must show that it (1) is a member of a protected class, (2)

---

[6] This court will assume, *arguendo*, for the sole purpose of evaluating Jamerson's § 1981 claim, that the County Clerk's Office did utilize Voice Printing's services to print at least one copy of the 2001 *Journal of Proceedings*. Whether the County Clerk's office did in fact utilize Voice Printing's services to print the 2001-2002 *Journal of Proceedings*, and if so, whether utilizing those services breached the County's price agreement with Jamerson this court need not decide. This is because the court will decline to exercise supplemental jurisdiction over Jamerson's state law breach of contract claim.

17

AO 72A
(Rev.8/82)

satisfactorily performed the contract, (3) suffered an adverse action, and (4) was treated differently than another similarly situated contractor outside the protected class. *See Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996); *Amber Pyramid Inc. v. Buffington Harbor Riverboats, LLC*, 2005 WL 352435 at *3 (7th Cir. 2005). A minority-owned company, such as 4 Star, assumes an "imputed racial identity" from its shareholders, *see Amber Pyramid*, 2005 WL 352435 at *3, and, taking the facts in a light most favorable to 4 Star, it has suffered an adverse action, that is, the breach of its price agreement with the County. This court finds, however, that 4 Star has failed to establish the fourth prong of the prima facie case, and consequently, the plaintiff's § 1981 claim must fail. *See Bio*, 424 F.3d at 596. To establish that someone, or some company, is "similarly situated," that company must be "'directly comparable [to the plaintiff] in *all material respects*.'" *Sartor v. Spherion Corp.*, 388 F.3d 275, 279 (7th Cir. 2004) (emphasis added) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002)).

To be sure, the gist of 4 Star's argument under § 1981 is that the County breached the price agreement it had with 4 Star because it is a minority-owned company, and instead, gave the work to a "white" company, Voice Printing. But, under *McDonnell Douglas*, it is not enough to point to another company and say that that company must have received the work because that company is not owned by a minority. Rather, 4 Star must establish that the other company, in this case, Voice Printing, is directly comparable to 4 Star in all material respects. 4 Star has failed to do so. Rather, the evidence shows that 4 Star and Voice Printing are not directly comparable in *all material respects*. This is because Voice Printing's relationship with the County is markedly different from 4 Star's relationship with the County, as Voice Printing had worked with the County for eighteen years (or, at the very least, "many years"). (Ryan Dep. at 18.) Accordingly, the different treatment

18

AO 72A
(Rev.8/82)

of the two companies may have legitimately been based upon Voice Printing's long-term relationship with the County. Thus, because the two companies are not "similarly situated," direct comparison between the two companies is inappropriate for *McDonnell Douglas* purposes. Consequently, and for all of the foregoing reasons, the defendants' motion for summary judgment on the plaintiff's § 1981 claim will be granted.

## D. Breach of Contract Claim

In light of the dismissal of all of Jamerson's federal claims, the final issue before the court is whether this court should maintain supplemental jurisdiction over Jamerson's remaining state law breach of contract claim. As the court has noted throughout its analysis, Jamerson does have a viable breach of contract claim against the County. And, case law in the Seventh Circuit establishes a "presumption" against district courts retaining jurisdiction over supplemental state law claims after the federal claims (and concomitant federal interest) have disappeared from a case. In *Groce v. Eli Lilly & Co.*, 193 F.3d 496 (7th Cir.1999), the Seventh Circuit "emphasize[d] that it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Id.* at 501. *Groce* further taught that "there is a presumption against retaining jurisdiction of supplemental state law claims" in such instances. *Id.* This presumption is "rooted in well-established principles, including the need to afford litigants who actually have cases in which there is a federal interest as expeditious a form of justice as is reasonably possible, and a substantial comity interest in allowing state courts to apply and to interpret their own laws, at least in cases where there is no federal interest at stake." *Williams Elecs. Games, Inc. v. Garrity*, 2005 WL 2284280 at *1 (N.D. Ill. 2005); *see also Kennedy v. Schoenberg Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir.1998) ("'[R]espect for

19

the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become [a] paramount concern.'") (quoting *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir.1989)).

This presumption, however, is just that, a presumption not a rule, and as the Supreme Court, in *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) stated, a district court, in considering the factors set forth in § 1367(c), "'should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). In light of the fact that there is no federal question or interest remaining in this case, and after careful consideration of the factors outlined in *City of Chicago*, this court determines that this case most sensibly should proceed in state court.

Specifically, while it appears that the defendants have indeed briefed the breach of contract issue in this court (although giving it short thrift), the plaintiff has not briefed this claim, and the court is uncertain as to whether the plaintiff directed his discovery to that end. Thus, by proceeding in state court, the plaintiff will have an opportunity to focus his discovery efforts and argument on his breach of contract claim. And, although discovery in this case is closed, such discovery can undoubtedly be used in the state court proceeding. This will further lead to the most efficient disposition of this case, and will help to prevent the duplication of judicial resources. Furthermore, the plaintiff's breach of contract claim involves the bidding procedure for and legal effect of Milwaukee County's "price agreements" with vendors. Thus, specific Milwaukee County ordinances, and/or the County's internal procedures as well as state law will most likely need to be examined in deciding this claim. Such being the case, this court finds that comity, that is, the interest

20

in allowing state courts to apply and to interpret the state's own laws, weighs heavily in favor of this court declining supplemental jurisdiction. Accordingly, this court will decline to exercise supplemental jurisdiction over Jamerson's breach of contract claim and rather, will dismiss the breach of contract claim without prejudice so that Jamerson may file his claim in state court.[7]

## IV. CONCLUSION AND ORDERS

In conclusion, and for all of the foregoing reasons, the defendants' motion for summary judgment on the plaintiff's claims under § 1983, § 1981, and the Fourteenth Amendment will be granted, and the plaintiff's motion for summary judgment on such claims will be denied. Furthermore, the plaintiff's remaining state law breach of contract claim will be dismissed without prejudice so that the plaintiff may refile his breach of contract claim in Milwaukee County Circuit Court.

Finally, there are a few outstanding motions in this case that the court must deal with. First, is the defendants' motion for judgment on the pleadings which was filed in conjunction with the defendants' motion for summary judgment. That motion will be denied as moot in light of this court's findings on the defendants' motion for summary judgment. Second, in January of 2005, the plaintiff filed several motions: a motion for default judgment, a motion to strike the defendants' answer, and a motion to dismiss the defendants' answer. Although this court never specifically decided these motions, they were rendered moot by the court's order granting the defendants' an

---

[7] The court notes that pursuant to 28 U.S.C. § 1367(d), "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as [] the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

21

extension of time in which to file their answer. Accordingly, those motions will also be denied as moot.

**NOW THEREFORE IT IS ORDERED** the plaintiff's motion for summary judgment be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's claims under 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the Fourteenth Amendment be and hereby are **DISMISSED**;

**IT IS FURTHER ORDERED** that the plaintiff's state law breach of contract claim be and hereby is **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that the defendants' motion for judgment on the pleadings be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for default judgment be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to strike be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to dismiss be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 7th day of June 2006, at Milwaukee, Wisconsin.

WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

23

AO 72A
(Rev.8/82)